USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/10/2015

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
  JACOB FRYDMAN,                                                  :
                                                                  :
                              Plaintiff,                          :     1:14-cv-8741-GHW
                                                                  :
                   -v -                                           :     MEMORANDUM OPINION
                                                                  :           AND ORDER
  WARREN DIAMOND and SCOTT DIAMOND,                               :
                                                                  :
                                                                  :
                              Defendants.                         :
                                                                  :
------------------------------------------------------------------X
```

GREGORY H. WOODS, United States District Judge:

The parties in this case have jointly managed a real estate holding company for over a decade. The relationship has been rocky, as documented by a series of settlement agreements that govern the parties' relationship. In this most recent of several lawsuits, the plaintiff, Mr. Jacob Frydman, alleges that the defendants, Mr. Warren Diamond and Mr. Scott Diamond, have violated the Racketeer Influenced and Corrupt Organizations Act, and breached a series of contractual and other legal duties. Arguing that the dispute resolution provision of a 2005 settlement agreement requires that this action be arbitrated, the defendants have moved to compel arbitration and dismiss the complaint. Because the 2005 arbitration agreement was subsequently amended expressly to permit any party to initiate any "action seeking injunctive or equitable relief . . . in a court of competent jurisdiction," notwithstanding the provisions of the 2005 settlement agreement, the Court holds that this action is not subject to arbitration. Accordingly, the defendants' motion to compel arbitration and dismiss the complaint is denied.

**I.      Background**

   **A.  Factual Background**

Mr. Frydman, a real estate investor and developer, Mr. Warren Diamond, and his son, Mr. Scott Diamond, together with others—all acting through a web of corporate entities—jointly own 500 Lincoln LLC ("500 Lincoln"), a real estate investment company.  *See* Complaint, Dkt. No. 1, ¶¶ 8-19.[1]  The principal asset of 500 Lincoln is a large building located diagonally across from the entrance to the Lincoln Tunnel, at 500 Tenth Avenue.  *Id.* at ¶ 10.  The management of 500 Lincoln is governed by an Amended and Restated Operating Agreement, dated as of October 31, 2002.  *Id.* at ¶ 15; Declaration of Steven Cooper ("Cooper Decl."), Dkt. No. 17, Ex. C (the "Operating Agreement").

In 2005, in response to a series of disputes between Mr. Frydman and Mr. Warren Diamond regarding the management of the property, a number of individuals and entities involved in the ownership or operation of 500 Lincoln entered into a settlement agreement.  Cooper Decl., Ex. G (the "2005 Settlement Agreement").  The signatories to the 2005 Settlement Agreement included both the plaintiff and Mr. Warren Diamond, but Mr. Scott Diamond, did not execute that agreement in his individual capacity.  *Id.*  Mr. Scott Diamond is not alleged to have been actively involved in the management of the business at that time.  The 2005 Settlement Agreement limited Mr. Warren Diamond's involvement in the operation of the business, and provided that Mr. John Del Monaco would represent Mr. Warren Diamond's economic interests in the business.  Compl. at ¶¶ 83-85.

Significantly for purposes of this motion, the 2005 Settlement Agreement contained a comprehensive dispute resolution provision.  Section 12 of the 2005 Settlement Agreement requires

---

[1] The allegations in the plaintiff's complaint are undisputed by the defendants for purposes of this motion.  *See* Defendants' Brief ("Defs. Br."), Dkt. No. 18 at 3 n.2.

2

the contracting parties to settle their disputes using arbitration. The scope of that provision is broad. In particular, Section 12 provides that:

> All disputes between the parties hereto and/or under the Operating Agreement arising out of relating in any way to this Agreement or the business of 500 Lincoln . . . "<u>Disputes</u>" . . . shall be resolved exclusively pursuant to this Section 12. The parties hereto expressly waive their rights to seek resolution of the Disputes in any other judicial or non-judicial forum.

2005 Settlement Agreement § 12 (emphasis in original). The 2005 Settlement Agreement goes on to detail in four single-spaced pages the rules governing any potential arbitration proceedings between the parties. *Id.*

Following the 2005 Settlement Agreement, the business operated smoothly for six years under the joint management of Mr. Frydman, his business partner, Mr. Rutter, and Mr. Del Monaco. Compl. at ¶¶ 90-92. According to the complaint, the wheels fell off again when Mr. Del Monaco resigned as co-manager of the business, and Mr. Warren Diamond's son, Mr. Scott Diamond, asserted managerial rights over the business. *Id.* at ¶¶ 93-105. The series of ensuing disputes resulted in another settlement agreement in 2012 (the "2012 Settlement Agreement"). *Id.* at ¶¶ 118-119; Cooper Decl., Ex. B. Unlike the 2005 Settlement Agreement, that agreement was executed by all three of the parties to this litigation—Mr. Frydman, Mr. Warren Diamond, and Mr. Scott Diamond.

The parties to the 2012 Settlement Agreement expressly ratified the provisions of the 2005 Settlement Agreement. Section 20 of the 2012 Settlement Agreement provides that "*[e]xcept as specifically amended* by the terms hereof, the Parties hereto ratify and reaffirm each of the terms, agreements, conditions, representations, warranties, and covenants set forth" in the 2005 Settlement Agreement. 2012 Settlement Agreement § 20 (emphasis added). As the language of Section 20 suggests, some provisions of the 2005 Settlement Agreement were specifically amended in 2012. In particular, Section 19 of the 2012 Settlement Agreement provides that:

3

> Should any dispute arise between the Parties which gives rise to injunctive or equitable relief pursuant to the terms of this Agreement, the Operating Agreements or the Settlement Agreements, then notwithstanding anything else contained in such agreements, the party initiating an action seeking injunctive or equitable relief may at his/her/its election bring such action in a court of competent jurisdiction, and each of the other Parties hereby consent to same and shall not seek to dismiss or move such action to arbitration or other adjudication.

2012 Settlement Agreement § 19.

This motion turns on the interpretation of this provision of the 2012 Settlement Agreement. The plaintiff claims that it limits the scope of the broad arbitration agreement contained in the 2005 Settlement Agreement, and expressly allows him to bring any action seeking equitable relief in the forum of his choosing. The defendants argue that it should be read not to limit the scope of the parties' commitment to arbitrate disputes, but, rather, as a standard "aid of arbitration" provision. Given the particular (and arguably peculiar) language of the parties' agreements in this case, the Court must agree with the plaintiff.

### B.  Procedural History

The procedural history of this case begins before the complaint was even filed. On October 27, 2014, the plaintiff emailed a draft of the complaint to the defendants. Cooper Decl., Ex. D. In his email, the plaintiff threatened that he would file the complaint unless the parties could resolve an ongoing dispute. *Id.*

On October 30, 2014, before the complaint was filed, the defendants preemptively filed a demand for arbitration with the American Arbitration Association (the "AAA"). Cooper Decl., Ex. I. (The defendants do not explain how that action was consistent with the terms of the 2005 Settlement Agreement, which provides clear rules regarding the initiation of arbitration under its terms, beginning with a notice to the opposing party. 2005 Settlement Agreement § 12.) On the same day, the defendants commenced a declaratory judgment action in New York state court,

4

seeking, among other things, a declaration that the arbitration clauses in the Operating Agreement, and the 2005 and 2012 Settlement Agreements were valid and enforceable. Defs. Br. at 8.

The plaintiff commenced this action on November 3, 2014. This motion ensued. The Court understands that the plaintiff has declined to participate in the AAA arbitration on the basis that there is "no mandatory arbitration provision with respect to the matters asserted by the Diamonds in [the AAA] arbitration . . . ." Cooper Decl., Ex. L, at 2.

## II.     Analysis

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), was enacted to "replace judicial indisposition to arbitration with a national policy favoring [it] . . . ." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (internal quotation marks omitted) (alteration in original). The FAA "is an expression of 'a strong federal policy favoring arbitration as an alternative means of dispute resolution.'" *Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008) (quoting *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001)). Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Arbitration agreements are contracts, "on equal footing with other contracts," so courts must "enforce them according to their terms." *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citation omitted). Indeed the purpose of the FAA was "to make arbitration agreements as enforceable as other contracts, *but not more so.*" *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003) (emphasis in original) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967). "[A] party may be compelled to arbitrate a dispute only to the extent he or she has agreed to do so." *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F.Supp.2d 566, 569 (S.D.N.Y. 2009) (citation omitted).

5

A court must evaluate four factors when deciding a motion to compel arbitration:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998), abrogated on separate grounds by *Katz v. Cellco P'ship*, -- F.3d -- , No. 14-138, 2015 WL 4528658 (2d Cir. July 28, 2015)).

In deciding a motion to compel arbitration, "the court applies a standard similar to that applicable [to] a motion for summary judgment. If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). Thus, "it is proper (and in fact necessary) to consider . . . extrinsic evidence when faced with a motion to compel arbitration." *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06 Civ. 839 (HB), 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006) (citing *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 32 (2d Cir. 2001)).

### A. Agreement to Arbitrate

The party seeking to compel arbitration "must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010). To satisfy the initial burden, the moving party need not establish that "the agreement would be enforceable, merely that one existed." *Id.* (emphasis in original). Once the party has made a prima facie showing that an agreement existed, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000)). *See also Schreiber v. K–Sea Transp. Corp.*, 879 N.E.2d 733 (2007).

6

Since arbitration agreements are considered contracts, *Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*, 775 F.3d 145, 148 (2d Cir. 2014), whether the parties entered into a binding arbitration agreement is governed by state contract law principles. *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 27 (2d Cir. 2002). In this case, the two relevant contracts—the 2005 Settlement Agreement and the 2012 Settlement Agreement—are both expressly governed by New York law. 2005 Settlement Agreement § 23; 2012 Settlement Agreement § 24(a).

The defendants have met their burden to show that an agreement to arbitrate existed. Indeed, none of the parties to this litigation disputes that the 2005 Settlement Agreement is a binding agreement, or the scope of the arbitration provisions laid out in that agreement. Nor do they contend that the 2012 Settlement Agreement is unenforceable. The parties have not briefed the issue whether the 2005 Settlement Agreement is binding on Mr. Scott Diamond, who was not a signatory to that agreement.[2] However, given that there is no dispute that the 2005 Settlement Agreement is an enforceable agreement between Mr. Frydman and Mr. Warren Diamond and that the 2012 Settlement Agreement is an enforceable agreement, binding on all three parties to this action, the Court need not decide that issue.

### B. Scope of Agreement to Arbitrate

The dispute between the parties can be framed within the second inquiry required by *Oldroyd*—do the plaintiff's claims fall within the scope of the parties' agreement to arbitrate?[3]

---

[2] Section 20 of the 2012 Settlement Agreement states that the parties to that agreement, including Mr. Scott Diamond, "hereby ratify and reaffirm each of the terms, agreements . . . set forth in each of the Operating Agreements and Settlement Agreements and acknowledge that such agreements constitute the valid and legally enforceable undertakings and obligations of Parties." 2012 Settlement Agreement § 20. The Court observes that the provision uses the words "ratify" and "reaffirm," each of which may connote a reaffirmation of an existing obligation, as opposed to the creation of a new one. Similarly, the Court observes the absence of an article before the final word "Parties" in this provision. That omission may be a typographical error, but may also suggest an understanding by the parties to the 2012 Settlement Agreement that the ratification did not apply to "all" parties or "the" parties, but rather to a selection of "some" parties. In the absence of briefing, the Court will not rule on the effect of this provision.

[3] In this case, the first and second *Oldroyd* tests are logically intertwined. Here, driven by the language of the Second Circuit's decision in *National Union Fire Ins. Co.*—which frames the first inquiry as whether an agreement to arbitrate exists "at all"—the Court has answered that question in the affirmative, and then framed the substantive dispute to require an answer to the following question—how does the 2012 Settlement Agreement modify the scope of the arbitration provision in the 2005 Settlement Agreement? The same substantive question could also be framed as an

7

Whether a dispute is arbitrable rests on the answer to two questions: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *National Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir.1996). "There is a strong federal policy favoring arbitration as an alternative means of dispute resolution. In accordance with that policy, [courts] will 'construe arbitration clauses as broadly as possible,' resolving 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *Oldroyd*, 134 F.3d at 76 (citations omitted).

"The parties may, however, limit by agreement the claims they wish to submit to arbitration. 'If the parties make such an intention clear, the federal policy favoring arbitration must yield.'" *Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (quoting *New York v. Oneida Indian Nation*, 90 F.3d 58, 61 (2d Cir. 1996)). Courts must treat agreements to arbitrate like any other contract. S*ee Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989). "Where the parties to an arbitration agreement specifically have excepted a certain type of claim from mandatory arbitration, it is the duty of courts to enforce not only the full breadth of the arbitration clause, but its limitations as well." *Oneida*, 90 F.3d at 62 (emphasis added). The Supreme Court has explained that:

> the FAA does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.

*Volt Info.*, 489 U.S. at 478 (internal citations omitted).

The parties do not appear to dispute whether this litigation would fall within the scope of the broad arbitration provision of the 2005 Settlement Agreement described above had it remained unmodified. The plaintiff contends, however, that the parties' broad agreement to arbitrate in that

---

analysis within the first *Oldroyd* test by posing the question—is the 2005 Settlement Agreement's arbitration provision applicable to this dispute? The result under either approach is the same.

agreement was modified and superseded by Section 19 of the 2012 Settlement Agreement ("Section 19").[4]  The plain language of Section 19 supports the plaintiff's position.

> Section 19 of the 2012 Settlement Agreement provides that:
>
> Should any dispute arise between the Parties which gives rise to injunctive or equitable relief pursuant to the terms of this Agreement, the Operating Agreements or the Settlement Agreements, then notwithstanding anything else contained in such agreements, the party initiating an action seeking injunctive or equitable relief may at his/her/its election bring such action in a court of competent jurisdiction, and each of the other Parties hereby consent to same and shall not seek to dismiss or move such action to arbitration or other adjudication.

2012 Settlement Agreement § 19.  It is clear from the text of this provision ("notwithstanding anything else contained in such agreements") that it modifies the agreements in the 2005 Settlement Agreement.  Reasonably, the defendants do not dispute this point.  Defs. Br. at 18.

The parties do, however, dispute the meaning of Section 19.  The plaintiff argues that Section 19 provides the parties an alternative to arbitration for all actions—such as this one—in which a party seeks equitable relief.  The defendants argue that Section 19 was intended to be a narrow exception to the parties' broad agreement to arbitrate, and that the plaintiff's interpretation of Section 19 would render the parties' agreement to arbitrate meaningless because any party could avoid arbitration by simply including any type of claim of injunctive or equitable relief in his complaint.  Instead, the defendants contend, the provision should be read like a standard "aid of arbitration" provision of the sort that allows a party to an arbitration agreement to seek equitable or injunctive relief either to enforce an arbitral award or to maintain the status quo pending arbitration.  Defs. Br. at 21.

The defendants' argument founders on the plain language of the 2012 Settlement Agreement.  "In interpreting a contract under New York law, 'words and phrases . . . should be

---

[4] The Court observes that the plaintiff has brought this action only against parties to the 2012 Settlement Agreement, and not against any persons or entities that signed the 2005 Settlement Agreement, but not the 2012 Settlement Agreement.

9

given their plain meaning,' and the contract 'should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (quoting *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003)). The Court must, therefore, be guided by the plain language of the 2012 Settlement Agreement.

Section 19 expressly provides that any "party initiating an action seeking injunctive or equitable relief may at his/her/its election bring such action in a court of competent jurisdiction . . . ." 2012 Settlement Agreement § 19. This provision must be read in accordance with its plain meaning—parties to the 2012 Settlement Agreement have the right to bring an action seeking equitable relief in court. The provision goes on to establish firmly that the right of the parties to pursue such litigation is not in aid of arbitration, but that, rather, it is a substitute for arbitration: "each of the other Parties hereby consent to same and shall not seek to dismiss or otherwise move *such action* to arbitration or other adjudication." *Id.* (emphasis added). Remember, too, that Section 19 expressly provides that its provisions apply "notwithstanding anything else contained in" the 2005 Settlement Agreement. All of which makes it clear that Section 19 establishes Mr. Frydman's right to bring an action seeking equitable relief—such as this one—in the court of his choice, notwithstanding the broad arbitration provisions of the 2005 Settlement Agreement. This result is mandated by the clear meaning of the words that the parties chose to reflect their agreement in this case.

The defendants argue that Section 19 should be read as an aid of arbitration provision, but they are unable to support their interpretation with the plain language of the contract itself. The language of Section 19 differs markedly from common aid of arbitrations provisions. Such provisions typically provide that litigation is permitted only in order to assist or supplement anticipated or pending arbitration. *See, e.g.,* American Arbitration Association Guide to drafting dispute resolution clauses, Model Preliminary Relief Clause, 26 West's Legal Forms, Alt. Disp. Res. § 1.8 ("Either party . . . may, without waiving any remedy under this agreement, seek from any court

10

having jurisdiction any interim or provisional relief that is necessary to protect the rights or property of that party, pending the establishment of the arbitral tribunal (or pending the arbitral tribunal's determination of the merits of the controversy).").

The arbitration clause in the Operating Agreement contained precisely this type of language. The clause allowed litigation for only two narrow purposes—provisional relief in aid of arbitration or to enforce the right to a payment of a sum certain. Section 10.12 of the Operating Agreement provided that:

> The parties will submit any dispute under this Agreement to an arbitrator to be settled by arbitration. [. . .] Further, the parties hereto expressly agree that proceeding to arbitration and obtaining an award thereunder will be a condition precedent to bringing or maintaining any action in any court with respect to any dispute arising under this Agreement, except for the institution of a civil action to maintain the status quo during the pendency of any arbitration proceeding and except for an action to enforce the right to payment of a sum certain.

Cooper Decl., Ex. C § 10.12. The parties knew how to write a limited aid of arbitration provision. Instead, they wrote, and agreed to, Section 19, which is explicitly a provision that supports litigation *in lieu* of arbitration, not in aid of it.

The Court is obligated to enforce the parties' current agreement to arbitrate—and its current limitations. "[W]hile the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA 'was to make arbitration agreements as enforceable as other contracts, *but not more so.*'" *JLM Industries, Inc.,* 387 F.3d at 171 (emphasis original) (quoting *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003)). The Court cannot accept the defendants' invitation to re-write Section 19 into an aid in arbitration provision simply because that reading promotes arbitration. In Section 19, the parties have clearly agreed to allow the plaintiff to bring "an action seeking injunctive or equitable relief" in this court, and have further agreed not to remove "such action" to arbitration. Therefore, the Court must deny the defendants' request to compel the plaintiff to arbitrate this case; the 2012 Settlement Agreement does not require that result. Rather, it expressly prohibits it.

In their brief, the defendants allude to the possibility that the Court might find that Section 19 carves the plaintiff's claims for equitable relief out of the scope of the 2005 Settlement Agreement, but that his legal claims must be pursued in arbitration. *See* Reply at 8 ("Should the Court find Plaintiff's purported claims for equitable relief to be nonarbitrable, those claims should be stayed pending resolution of the arbitration."). The defendants did not provide support for that conclusion in their brief, however. Instead, they left substantively unchallenged the plaintiff's argument that the text of Section 19 supports the conclusion that the entirety of his action can be brought in this Court.

Indeed, by its plain language, Section 19 does not apply only to *claims* for equitable relief, but to any *action seeking* equitable relief. Section 19 then prohibits the removal to arbitration not of "such claims requesting equitable relief," or similar language, but rather "*such action*." And Section 19 is introduced with broad language that seems to encompass the entirety of any dispute giving rise to equitable relief. 2012 Settlement Agreement § 19 ("Should any dispute arise between the Parties which gives rise to injunctive or equitable relief . . . ."). In the absence of a substantive counterargument from the defendants on this point at this time, the Court will construe Section 19 to encompass the entirety of this action—which is on its face "an action seeking injunctive or equitable relief"—not merely claims for equitable relief arising under this action.[5]

## IV. Conclusion

For the foregoing reasons, Defendants' motion to compel arbitration and to dismiss the complaint is denied. In light of the Court's ruling on the motion, the defendants' request that the Court impose sanctions is also denied.[6]

---

[5] Perhaps as a consequence of the procedural context of this motion, the defendants did not argue that the language of Section 19 is ambiguous—for example that it permits the simultaneous litigation of a single dispute in two separate fora—an arbitration for legal relief and a court proceeding for equitable relief. Such an argument is not before the Court now; the Court does not, however, preclude such an argument in the future.

[6] Defendants also assert that they are entitled to an award of attorney's fees and costs under the 2012 Settlement Agreement's covenant not to sue, which, the defendants argue, explicitly prohibits the plaintiff from "[b]ringing an action for any claims sounding in fraud, and/or based on any claims or alleged conduct prior to December 12, 2012 . . . ."

The Clerk of Court is instructed to terminate the motion pending at docket number 16.

SO ORDERED.

Dated: September 10, 2015  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge

---

Defs. Br. at 25.  As a procedural matter, the Court cannot rule on a breach of contract claim in the context of a motion to compel arbitration.  Defendants' request is denied without prejudice.